UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- x

UNITED STATES OF AMERICA      :      **DEFENDANT'S**
     :      **SENTENCING**
    – against –      :      **MEMORANDUM**
     :

GIUSEPPI MICCIARI,      :
     :

     Defendant.      :      Case No. 25-cr-00031

----------------------------------------------------------------- x

## <u>MEMORANDUM IN AID OF SENTENCING ON BEHALF OF DEFENDANT GIUSEPPE MICCIARI</u>

Dated:  White Plains, New York
        August 26, 2025

Jill K. Sanders, Esq.
PAPPALARDO & PAPPALARDO, LLP
Attorneys for Defendant Giuseppe Micciari
222 Bloomingdale Road, Suite 301
White Plains, NY 10605
Tel (914) 725-7000
Fax (914) 725-1700
Email jsanders@pappalardolaw.com

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................................. 1

II.  MR. MICCIARI'S BACKGROUND ................................................................... 2
    A.  Early Life ..................................................................................................... 2
    B.  Treatment and Psycho-Sexual Evaluation ................................................. 3
    C.  Pre-Trial Incarceration .............................................................................. 11
    D.  Future Plans & Network of Support .......................................................... 12

III.  FACTS & PROCEDURAL HISTORY ............................................................. 13

IV.  STATUTORY & GUIDELINES ANALYSIS ................................................... 15
    A.  Statutory Penalties .................................................................................... 15
    B.  Guidelines Calculation .............................................................................. 16
    C.  Discussion of the Guidelines & Sentencing in Non-Production Child Pornography Cases ......................................................................................................... 17

V.  MR. MICCIARI'S REQUEST FOR A REASONABLE NON-GUIDELINES SENTENCE ........................................................................................................ 22
    A.  The Nature & Circumstances of the Offense (18 U.S.C. § 3553(a)(1)) ....................... 24
    B.  The History & Characteristics of the Defendant (18 U.S.C. § 3553(a)(1)) .................. 25
    C.  The Seriousness of the Offense, Respect for the Law, & Just Punishment (18 U.S.C. § 3553(a)(2)(A)) ...................................................................... 26
    D.  Deterrence to Criminal Conduct & Protection from Further Crimes (18 U.S.C. § 3553(a)(2)(B), (C)) ............................................................... 27
    E.  The Need for Treatment & Training (18 U.S.C. § 3553(a)(2)(D) ............... 30
    F.  The Kinds of Sentences Available & the Sentencing Ranges Established (18 U.S.C. § 3553(a)(3), (4)) ................................................................... 31
    G.  The Need to Avoid Sentencing Disparities (18 U.S.C. § 3553(a)(6)) ......................... 32
    H.  The Need to Provide Restitution to Any Victims of the Offense (18 U.S.C. § 3553(a)(7)) ....................................................................... 34
    I.  Imposition of Fines & Forfeiture of Criminal Proceeds ................................. 34

VI.  CONCLUSION ................................................................................................. 36

## I.    INTRODUCTION

Pursuant to a plea agreement, Giuseppe Micciari pled guilty on March 18, 2025, to Count One of the superseding information filed under docket number 25-cr-00031, admitting to Possession of Child Pornography (18 U.S.C. § 2252A(a)(5)(B)). See Plea Agreement; Superseding Information (ECF No. 40). Pursuant to that Plea Agreement, the parties agreed that Mr. Micciari's Adjusted Offense Level is 28, that he is in the Criminal History I category, and that the advisory Guidelines range of imprisonment is 78 to 97 months. See Plea Agreement: page 3. Mr. Micciari has also agreed to a forfeiture of an iPhone. Id.: page 1.

A Pre-Sentence Investigation Report ("PSR") prepared by the Probation Department was submitted to the Court on August 25, 2025. See PSR (ECF No. 45). The Probation Department has determined that the Adjusted Offense Level is 30, that Mr. Micciari is in the Criminal History I category, and that the advisory Guidelines range of imprisonment is 97 to 121 months. Id.: ¶97. The Probation Department has recommended a sentence of 48 months' imprisonment, followed by five years' supervised release. Id.: page 29.

Mr. Micciari is scheduled for sentencing before Your Honor on September 16, 2025. This memorandum is submitted in support of Mr. Micciari's request, based upon factors enumerated in 18 U.S.C. § 3553(a), for a below-Guidelines sentence of 30 months' imprisonment, followed by five years of supervised release in the community. Mr. Micciari would further ask the Court to impose no fine, the $100.00 mandatory assessment, no additional special assessments, and the minimum restitution of $3,000.00.

## II.    MR. MICCIARI'S BACKGROUND

### A.    Early Life

Mr. Micciari, who is now 29 years old, was born in New York to his parents Maria and Tony. He has four younger siblings – Sandro, Isabella, Gianluca, and Giacomo. Mr. Micciari primarily grew up in Yorktown, with his mother working as a real estate agent and his father owning a plumbing business.

After graduating from Yorktown High School in 2014, Mr. Micciari attended college. He graduated from the University of Maryland with a bachelor's degree in history in 2019. Thereafter, he moved back to Yorktown to his childhood home. For the next two years, Mr. Micciari attended St. Thomas Aquinas College in Orangeburg where he earned his master's degree in 2022.

In terms of work history, Mr. Micciari worked at Wilkin Farm while he was in high school. During the summers while attending college, he worked as a counselor at Adventure Camp for the Town of Yorktown. He also worked various restaurant jobs throughout his teenaged years and early 20s. After college and while he was completing his master's degree, Mr. Micciari worked at Brookside Elementary School in Yorktown as a teaching assistant. In 2021, he began working as a teaching assistant and leave replacement teacher at Yorktown High School. Mr. Micciari was also the assistant football coach for the school.

Once he was aware of the investigation by federal authorities in August 2023, Mr. Micciari resigned from his job at Yorktown High School. Later, he also voluntarily surrendered his teaching certificate as a teacher of Social Studies (grades 7 through 12) and withdrew his application for his pending application to be a teacher of students with disabilities (grades 7 through 12). See Surrender & Withdrawal Agreement, **Exhibit A**. As part of the agreement with the New York

State Education Department, Mr. Micciari further agreed to waive his right to apply for any other teaching-related certificate at any future date.

In late August or early September 2023, Mr. Micciari began working at Fortina, an Italian restaurant, and primarily works out of the Armonk location. He worked as a server, which required him to interact with customers, collaborate with the kitchen staff and restaurant management, deliver food and clear tables, issue bills and process payments, and many other duties. Mr. Micciari was good at providing a superior level of hospitality to the customers and guests. As he has an outgoing nature, Mr. Micciari enjoyed this job. He worked full time, and the job provided him with a steady stream of income.

From November 1, 2023, through May 16, 2025, Mr. Micciari was on pre-trial release with conditions including home detention. Mr. Micciari also moved out of his home in Yorktown and began living with his grandmother in Dobbs Ferry, as this was a condition of his release requested by the government. In September 2024, Mr. Micciari secured an apartment of his own in White Plains after his grandmother's lease on her home in Dobbs Ferry ended. He remained living there until his incarceration in May 2025.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

### C.  Pre-Trial Incarceration

Mr. Micciari was incarcerated at the Westchester County Jail beginning on May 16, 2025, and he remains there pending sentence. While there, he has continued the treatment sessions with Dr. Minasian that he began prior to his incarceration. See Reports of Dr. Minasian, **Exhibit B**. Since his intake, he has been participating in the Community Oriented Re-Entry Program ("CORE") mental health treatment program. See CORE Letter, **Exhibit D**. He has attended all group and individual sessions as scheduled. Id. The program's objective is for the participant to establish and maintain therapeutic relationships in the correctional facility and in the community. The program further brings together various organizations to provide participants with treatment, such as cognitive behavioral therapy, mental health recovery, and addiction services, as well as life skills and job readiness. Specifically, Mr. Micciari participates in CORE's art and music classes, yoga courses, and creative writing classes in conjunction with his individual and group therapeutic sessions. He is also enrolled in an anger management course and attends a weekly peer group for men hosted by Family Services of Westchester.

While no one enjoys incarceration, Mr. Micciari has decided to use the time to work on himself. He states he plays basketball and is keeping up with an exercise routine, which he was lacking while he was living at home on house arrest; he has lost approximately 50 lbs since he began his incarceration. He has also used the time to explore future employment possibilities; in

this regard, he's taken courses on construction, HVAC, and plumbing as offered through the jail's tablet system. Currently, he's taking a course offered by the Khan Academy that teaches personal finance. Mr. Micciari also has rededicated himself to his faith and attends Catholic services on a weekly basis. Mr. Micciari also remains in contact with his family on a frequent basis.

### D.  Future Plans & Network of Support

When looking toward the future, Mr. Micciari has realized that all he really wants and what is truly important to him is to be with his family. Mr. Micciari regularly has contact with his mother, siblings, and other relatives. Just prior to his incarceration, Mr. Micciari's mother Maria was in a car accident in late April 2025. As a result of her examination at the hospital after that accident, she was diagnosed with brain cancer. Maria began treatment right away and is currently responding well. Mr. Micciari's incarceration at this time has been particularly challenging on an emotional level, both for him and his family. He has felt he hasn't been able to be there for his mother and his siblings, all while worrying about his mother's health.

Yet Mr. Micciari understands he must focus on becoming the best person he can be in order to be a better son and brother. He realizes that life is short and he truly just wants the simple things in life. He states, "I'm growing and I'm learning everyday." In terms of his future employment possibilities, he realizes he does well in the hospitality industry and may seek future opportunities there. Mr. Micciari has also indicated an interest in real estate, and he may wish to become a broker or an agent. He also may explore a trade, as he has experience assisting his father with plumbing and has recently completed several courses related to such work. Mr. Micciari even sees himself one day being a small business owner. He states, "I'm working to become the man I know I can be."

Mr. Micciari is surrounded by friends and family who are aware of his crime, and they continue to offer their love and support. See Letters of Support, **Exhibit E**; Photos, **Exhibit F**. Included are letters from Mr. Micciari's mother, siblings, and extended family members. There are also letters from people in the community who have known Mr. Micciari for many years.

## III.    FACTS & PROCEDURAL HISTORY

On August 9, 2023, Mr. Micciari was returning from a family trip to Italy when he was stopped by federal agents at the airport. At the same time, agents were also at Mr. Micciari's home executing a search warrant. Agents seized his cellphone and laptop from his person, and they also retrieved several other electronic items from his home. Mr. Micciari was relatively cooperative with agents and provided them with the passwords they requested to his online accounts, but he otherwise requested an attorney and would not answer further questions.

In the intervening months, defense counsel for Mr. Micciari reached out to the United States Attorney's Office to discuss the possibility of Mr. Micciari coming in for a pre-arrest proffer. He was prepared to take responsibility for having accessed images of CSEM and was willing to discuss same with prosecutors and agents. However, before any such meeting could occur, on November 1, 2023, Mr. Micciari was arrested by federal agents. He was charged by complaint with one count of Receipt and Distribution of Child Pornography (18 U.S.C. § 2252A(a)(2)(B) & 18 U.S.C. § 2252A(b)(1)) and one count of Possession of Child Pornography (18 U.S.C. § 2252A(a)(5)(B) & 18 U.S.C. § 2252A(b)(2)). See Complaint (ECF No. 1). According to the complaint, in June of 2023, Mr. Micciari knowingly received images containing CSEM on his cellphone while he was in Westchester County, and he distributed or shared those images as well.

Id. The complaint indicates that the seized cellphone contained approximately 32 images and videos of CSEM in cached data, and two additional videos in the photo gallery. Id.

The complaint further alleges that Mr. Micciari had attempted to "hack" the Snapchat of a teenaged female; from May through August 2023, Mr. Micciari was in contact with a person whom he had paid €30.00 to gain access to the Snapchat of "Minor-1." Id. Thereafter, the complaint details that Minor-1 is a female minor who attends school where Mr. Micciari was a teaching assistant. Id.

███████████████████████████████████████████████████████

███████████████████████████████

At the initial appearance, the Government did seek Mr. Micciari's detention pending trial. Instead, the parties agreed to and the Court (Krause, J.) ordered his release with conditions, an unsecured bond of $50,000 signed by two guarantors, surrender of his passport, and home detention with location monitoring. See Bail Disposition (ECF No. 2); Appearance Bond (ECF No. 3); Receipt for Passport, **Exhibit G**. Mr. Micciari also could not live at his home in Yorktown, based on the Government representation that the target of the attempted "Snapchat hack" was Mr. Micciari's neighbor. See Appearance Bond (ECF No. 3).

On March 18, 2025, Mr. Micciari appeared in Court (Halpern, J.). Pursuant to a plea agreement, Mr. Micciari pled guilty to Count One of the superseding information filed under docket number 25-cr-00031, admitting to Possession of Child Pornography (18 U.S.C. § 2252A(a)(5)(B)). See Plea Agreement; Superseding Information (ECF No. 40). During his plea allocution, Mr. Micciari admitted to knowingly possessing and accessing with the intent to view digital images of child pornography from his iPhone while at his home in Yorktown. He acknowledged the images contained depictions of children who were not yet 12 years old, that the children were being sexually abused, and that he knew the images would depict child pornography when he accessed

them. Upon the application of the defense, pursuant 18 U.S.C. § 3143, the Court continued Mr. Micciari's release in the community with the same release conditions. Sentencing was adjourned to September 16, 2025.

On May 15, 2025, Pretrial Services Officer Abbott filed a memorandum regarding violation conduct with the Court. During a home visit on May 14, 2025, eight photos taken in April 2025 of topless adult women were found on Mr. Micciari's phone. Mr. Micciari admitted to Officer Abbott that he had accessed the Internet from an iPad at work; the iPad was used to schedule reservations at the restaurant. On the work iPad, Mr. Micciari looked up the social media account of an influencer he had followed prior to his arrest, and he took photos of the iPad with his phone. Mr. Micciari expressed remorse and advised Officer Abbott he had discussed this behavior with his therapist. Mr. Micciari, through counsel, agreed to surrender to the US Marshalls the following morning, May 16, 2025. This Court (Halpern, J.) revoked Mr. Micciari's bail, and he remains remanded to date.

## IV.    STATUTORY & GUIDELINES ANALYSIS

### A.    Statutory Penalties

Mr. Micciari pled guilty to one count of Possession of Child Pornography (18 U.S.C. § 2252A (a)(5)(B)). See Superseding Information (ECF No. 40). This offense carries a maximum term of imprisonment of 20 years; a maximum term of supervised release of life; a mandatory minimum term of supervised release of five years; a maximum fine of the greatest of $250,000.00, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; a $100.00 mandatory special assessment; an additional assessment of $5,000; and a special assessment of up to $17,000. See

Plea Agreement; 18 U.S.C. § 3583; 18 U.S.C. § 3571; 18 U.S.C. § 3013; 18 U.S.C. § 3014(a); 18 U.S.C. § 2259A.

Restitution also must be ordered by the Court in accordance with 18 U.S.C. §§ 2259A, 3663 and 3663A. The defendant agrees that the obligation to make such restitution shall be made a condition of probation (see 18 U.S.C. § 3563(b)(2)) or of supervised release (see 18 U.S.C. § 3583(d)), as the case may be. The restitution amount shall be paid according to a plan established by the Court. The defendant will be given credit against this restitution amount for any payments made prior to sentencing, as verified by the Office.

### B.  Guidelines Calculation

The Guidelines base offense level for Count 1 is 18. See U.S.S.G. § 2G2.2(a)(1); see also PSR (ECF No. 45): ¶22. Mr. Micciari's Criminal History Category is I. See U.S.S.G. § 4A1.1; see also Plea Agreement: page 3; PSR (ECF No. 45): ¶38.

Pursuant to Mr. Micciari's Plea Agreement, two levels are added to the base level because the images involved a prepubescent minor. See U.S.S.G. § 2G2.2(b)(2); see also Plea Agreement: page 2. Four levels are added because the images involved materials which portrays sadistic or masochistic conduct or other depictions of violence. See U.S.S.G. § 2G2.2(b)(4); see also Plea Agreement: page 2. Two levels are added because the offense involved the use of a computer for the possession, transmission, receipt, or distribution of the images or for accessing with intent to view the material. See U.S.S.G. § 2G2.2(b)(6); see also Plea Agreement: page 2. Lastly, five levels are added because the offense, including relevant conduct, involved at least 600 images. See U.S.S.G. § 2G2.2(b)(7)(D); see also Plea Agreement: page 2.

The Probation Department has determined the enhancements contemplated by Mr. Micciari's Plea Agreement are warranted. <u>See</u> PSR (ECF No. 45): ¶¶23, 25-27. However, the Probation Department has determined an additional two levels are warranted because the Mr. Micciari knowingly engaged in distribution in that he transmitted a Mega link containing images of child pornography. <u>See</u> U.S.S.G. § 2G2(b)(3)(F); <u>see also</u> PSR (ECF No. 45): ¶24.

The Plea Agreement provides for a two-level reduction for Mr. Micciari demonstrating an acceptance of responsibility through his allocution, pursuant to U.S.S.G. § 3E1.1(a). <u>See</u> Plea Agreement: page 2. Moreover, the Government expressed its intention to move for a further one-level reduction, pursuant to U.S.S.G. § 3E1.1(b), at the time of sentencing based on Mr. Micciari having given timely notice of his intention to enter a plea of guilty. <u>Id</u>.: pages 2-3. The Probation Department has similarly calculated these decreases in Mr. Micciari's offense level. <u>See</u> PSR (ECF No. 45): ¶¶33-34.

As such, the Plea Agreement calculates an offense level of 28 for Mr. Micciari. <u>See</u> Plea Agreement: page 3. Based on a Criminal History Category of I, this corresponds with a Guidelines sentence of 78 to 97 months of imprisonment. <u>See</u> U.S.S.G. Sentencing Table; <u>see also</u> Plea Agreement: page 3. The Probation Department has calculated an offense level of 30 for Mr. Micciari. <u>See</u> PSR (ECF No. 45): ¶35. Based on a Criminal History Category of I, this corresponds with a Guidelines sentence of 97 to 121 months of imprisonment. <u>See</u> U.S.S.G. Sentencing Table; <u>see also</u> PSR (ECF No. 45): ¶97.


**<u>C.</u>  <u>Discussion of the Guidelines & Sentencing in Non-Production Child Pornography Cases</u>**

The history of the Guidelines in non-production child pornography cases has been documented, reviewed, and studied extensively. <u>See</u> <u>e.g.</u> U.S. Sentencing Commission, <u>The</u>

History of the Child Pornography Guidelines (2009).[1] For various reasons, including the reasons detailed herein, there have been calls for years to revise the Guidelines for non-production cases, with recommendations from the U.S. Sentencing Commission having been available for more than a decade. See U.S. Sentencing Commission, Report to the Congress: Federal Child Pornography Offenses (2012)[2] (hereinafter "Federal Child Pornography Offenses 2012"). Indeed, the Commission has noted that "the existing sentencing scheme in non-production [child pornography] cases no longer adequately distinguishes among offenders based on their degrees of culpability." Id. at ii.

This is largely due to the application of enhancements to the base offense level. As recognized by the Commission, "four of the of six sentencing enhancements in U.S.S.G. § 2G2.2 – those relating to computer usage and the type and volume of images possessed by offenders, which together account for 13 offense levels – now apply to most offenders." Id. at iii. The four enhancements most frequently applied are for materials involving a pre-pubescent minor (U.S.S.G. § 2G2.2(b)(2)), the use of a computer (U.S.S.G. § 2G2.2(b)(6)), materials which depict violence (U.S.S.G. § 2G2.2(b)(4)), and number of images (U.S.S.G. § 2G2.2(b)(6)). See also PSR (ECF No. 45): ¶116 (discussing United States v. Dorvee, 604 F.3d 84 (2nd Cir. 2010) and the application of enhancements in non-production child pornography cases). In 2024, 92.6% of all § 2G2.2 cases involved images which depicted children under 12 years of age; 97.3% involved the use of the computer; 75.0% involve 600 or more images; and 50.6% involved violent images. See

---

[1]    Available    at    https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/sex-offenses/20091030_History_Child_Pornography_Guidelines.pdf (last accessed Aug. 25, 2025).

[2]    Available    at    https://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-child-pornography-offenses (last accessed Aug. 25, 2025).

U.S. Sentencing Commission, Use of Guidelines and Specific Offense Characteristics Guideline Calculation Based – Fiscal Year 2024.[3]

Regarding the enhancement for images which depict a pre-pubescent minor pursuant to U.S.S.G. § 2G2.2(b)(2), the Commission reported that "typical child pornography images contained in federal offender collections depict prepubescent children engaging in explicit sexual conduct." See Federal Child Pornography Offenses 2012 at 84. Similarly, the use of computer enhancement pursuant to U.S.S.G. § 2G2.2(b)(6) is nearly ubiquitous in criminal prosecutions.[4] Indeed, in 1996, the Commission criticized the two-level computer enhancement, stating that it doesn't distinguish between commercial distributors of online CSEM from individual consumers. See U.S. Sentencing Commission, Report to Congress: Sex Offenses Against Children Findings and Recommendations Regarding Federal Penalties (1996)[5] at 25-30 ("[T]he two-level adjustment might be narrowed to apply only to cases that involve distributing child pornography in a way that makes it widely accessible, such as posting it on a [Bulletin Boards] or Website"). As the Commission stated in its report to Congress in 1996, "a person's culpability depends on *how* they use a computer," not merely on whether a person uses a computer. Id. at 29 (emphasis in original). Now, in 2025, CSEM is almost exclusively found via the Internet through the use of a computer. As one federal judge noted, "As widespread as computer use is now, enhancing for use of a computer is a little like penalizing speeding but then adding an extra penalty if a car is involved."

---

[3]    Available    at    https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2024/Ch2_Guideline_FY24.pdf (last accessed Aug. 25, 2025).

[4]    As relevant to Mr. Micciari's case, a defendant's use of an iPhone meets the requirements for use of a computer. See United States v. Crow, No. 22-14267, 2023 WL 8469452, at *4 (11th Cir. Dec. 7, 2023).

[5]    Available at https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/199606-rtc-sex-crimes-against-children/199606_RtC_SCAC.pdf (last accessed Aug. 25, 2025).

Statement of Hon. Robin J. Cauthron (W.D. Okla.) before the U.S. Sentencing Commission, Austin, Texas (Nov. 19, 2009) at 6.[6]

The four-level enhancement for materials which portray sadistic or masochistic conduct or other depictions of violence pursuant to U.S.S.G. § 2G2.2(b)(4) has also received scrutiny. The enhancement is applied where the image depicts sexual activity involving a minor, and based upon an objective review of the image, the activity causes either physical or mental pain to the minor. See United States v. Bleau, 930 F.3d 35, 40-41(2d Cir. 2019). Where it is not uncommon for CSEM to depict sexual penetration of minors, it is likely that many, if not most, images of CSEM will thus be considered sadistic or masochistic. See e.g. United States v. Delmarle, 99 F.3d 80, 83 (2d Cir.1996) ("subjection of a young child to a sexual act that would have to be painful is excessively cruel and hence is sadistic"); United States v. Lyckman, 235 F.3d 234, 237-240 (5th Cir. 2000) (observing that the U.S.S.G. § 2G2.2(b)(4) enhancement is broadly construed to include all acts of minors engaged in sexual acts with adults).

Courts have also questioned the application of the number of images enhancement pursuant to U.S.S.G. § 2G2.2(b)(7)(D). In one unpublished decision, the Third Circuit quoted the district court which stated that "'the number of images doesn't reflect intent any longer, because the click of the mouse can result in many more images than anybody ever really perhaps wanted.'" United States v. Maguire, 436 Fed. Appx. 74, 78 (3rd Cir. 2011) (quoting district judge). Indeed, there is doubt "that the number of pictures alone captures the gravity of the crime of possession of child pornography," unlike drug crimes where the amount of narcotics can be weighed, or fraud cases where the amount of loss can be measured. Robinson, 669 F.3d at 778. This is because "[a] defendant who knowingly shares files containing child pornography does not necessarily know the

---

[6]    Available    at    https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20091119-20/Cauthron.pdf (last accessed Aug. 25, 2025).

number to be received. A saver of files, who has viewed and traded as many images as a non-saver of files, is subjected to a far greater sentencing guidelines range." Id. Rather, it might be more appropriate to apply an enhancement to a defendant who acquires a large number of images "over a long period of time" and had paid subscriptions for the illegal content. Id. at 769, 776, 778-779 (defendant had more than 7100 images, had acquired them over more than five years, and had subscribed to an online website).

Application of these four enhancements result in situations where "[h]ad [the defendant] actually engaged in sexual conduct with a minor, his applicable Guidelines range could have been considerably lower." Dorvee, 616 F.3d at 187. For this and other reasons, the Second Circuit held the child pornography Guidelines are "fundamentally different from most [Guidelines]" and "unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires." Id. 185. Indeed, the Sixth Circuit acknowledged that there are grounds for a policy disagreement with the child pornography Guidelines, as these enhancements apply in "almost every case," and that such is contrary to the purpose of enhancements, which "are meant to increase a sentence for conduct more aggravated than the typical type of offense;" as a result, U.S.S.G. § 2G2.2 is "an anomaly." United States v. Robinson, 669 F.3d 767, 778 (6th Cir. 2010). Because these four enhancements are inherent to the crime of conviction, they are rendered nearly meaningless and offer little to no help to sentencing judges in distinguishing between offenders – an approach that is fundamentally inconsistent with 18 U.S.C. § 3553(a). See United States v. Beiermann, 599 F.Supp.2d 1087, 1105 (N.D. Iowa 2009) (application of the level enhancements "that appear in nearly every child pornography case … blurs logical differences between least and worst offenders, contrary to the goal of producing a sentence no greater than necessary to provide just punishment"). When applying these enhancements to most non-production cases, "adherence

to the Guidelines results in virtually no distinction between the sentences for defendants [who are first-time offenders], and the sentences for the most dangerous offenders who, for example, distribute child pornography for pecuniary gain and who fall in higher criminal history categories." Dorvee, 616 F.3d at 174.

Thus the Supreme Court has held that district court judges "may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." Kimbrough v. United States, 128 S. Ct. 558, 570 (2007) (internal quotation marks omitted). Indeed, district courts may find that the "Guidelines sentence itself fails properly to reflect § 3553(a) considerations." Rita v. United States, 551 U. S. 338, 351 (2007)); see also Beiermann, 599 F.Supp.2d at 1104-1106 (categorically rejecting U.S.S.G. § 2G2.2 based on policy disagreements). As a result, district courts have been imposing below-Guidelines sentences in the majority of non-production child pornography cases. According to the Commission, in 2019, less than one-third (30.0%) of defendants convicted of non-production child pornography offenses received a sentence within the Guidelines range, and most defendants (59.0%) received a below-Guidelines sentence. See U.S. Sentencing Commission, Federal Sentencing of Child Pornography: Non-Production Offenses (2021)[7] at 5 (hereinafter "Non-Production Offenses 2021").

## V.    MR. MICCIARI'S REQUEST FOR A REASONABLE NON-GUIDELINES SENTENCE

Mr. Micciari is not asking the Court for a downward departure. See also Plea Agreement: page 3. However, pursuant to 18 U.S.C. § 3553, Mr. Micciari submits that a reasonable below-Guidelines sentence is warranted. The primary directive of 18 U.S.C. § 3553(a) is for the

---

[7]    Available at https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses (last accessed Aug. 25, 2025).

sentencing court to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). Section 3553(a)(2) states that such purposes are:

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)    to afford adequate deterrence to criminal conduct;
(C)    to protect the public from further crimes of the defendant; and
(D)    to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner[.]

In determining the minimally sufficient sentence, 18 U.S.C. § 3553(a) further directs the sentencing court to consider, *inter alia*, the following factors:

- The nature and circumstances of the offense (18 U.S.C. § 3553(a)(1));
- The history and characteristics of the defendant (18 U.S.C. § 3553(a)(1));
- The kinds of sentences available (18 U.S.C. § 3553(a)(3));
- The need to avoid unwarranted sentence disparities (18 U.S.C. § 3553(a)(6)); and
- The need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

The 18 U.S.C. § 3553(a) factors focus on the defendant as an individual. A sentencing court is "required to consider a host of individual variables and characteristics excluded from those calculations called for by the Guidelines." United States v. West, 383 F.Supp.2d 517, 520 (S.D.N.Y. 2005); Gall v. United States, 552 U.S. 38 (2007). Moreover, "[c]onsideration of the § 3553(a) factors is not a cut-and-dried process of factfinding and calculation; instead, a district judge must contemplate the interplay among the many facts in the record and the statutory guideposts." United States v. Fernandez, 443 F.3d 19, 29 (2nd Cir. 2006).

While the sentencing court must still correctly calculate the Guideline range (see Gall, 552 U.S. at 49, citing Rita, 551 U.S. at 338), it may not treat that range as mandatory or presumptive (see Gall, 552 U.S. at 51; Nelson v. United States, 555 U.S. 350, 352 (2009); United States v. Booker, 543 U.S. 220, 245-246 (2005)). Indeed, a sentence within the Guidelines range must not even be presumed by the sentencing court to be reasonable. See Nelson at 352. The sentencing

court must treat the Guidelines calculation as "one factor among several" to be considered in imposing an appropriate sentence under § 3553(a). <u>Kimbrough v. United States</u>, 552 U.S. 85, 90 (2007); 18 U.S.C. § 3553(a)(4)(A)(i). The sentencing court must "consider all of 18 U.S.C. § 3553(a)'s factors," "make an individualized assessment based on the facts presented," and explain how the facts relate to the purposes of sentencing. <u>Gall</u>, 552 U.S. at 49-50. As such, the sentencing court may consider a sentencing variance below the applicable Guidelines range based on the authority provided pursuant to <u>Booker</u> and its progeny. See <u>Booker</u>, 543 U.S. at 220; <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005); <u>United States v. Cavera</u>, 550 F.3d 180 (2d Cir. 2008) (en banc). A sentencing court need not find "extraordinary" circumstances to justify a sentence outside the Guidelines range. <u>Gall</u>, 552 U.S. at 47.

In the present matter, the defense is requesting that this Court impose a reasonable below-Guidelines sentence. Based upon the facts and circumstances of the instant offense and the factors set forth in 18 U.S.C. § 3553(a), a sentence within the adjusted Guidelines range would not be appropriate in Mr. Micciari's case; rather, a sentence of 30 months would be a more appropriate sentence. This proposed sentence is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).

## A.  The Nature & Circumstances of the Offense (18 U.S.C. § 3553(a)(1))

Mr. Micciari has pled guilty and accepts total and complete responsibility for his offenses. <u>See</u> PSR (ECF No. 45): ¶¶33-34 (subtracting 3 levels for acceptance of responsibility). Additionally, he clearly and honestly described his offense, accepted responsibility, and expressed remorse when interviewed by the Probation Department. <u>See</u> PSR (ECF No. 45): ¶20. Mr. Micciari demonstrates that he fully understands and acknowledges that his actions were illegal. Certainly,

he had absolutely nothing to do with the production of child pornography or with the hands-on sexual abuse of children. Id.: ¶117. However, he acknowledges that even the mere possession of child pornography is a serious offense that perpetuates the victimization and exploitation of children who have already victimized and exploited. Id.: ¶20.

While not excusing his criminal conduct, as set forth *supra*, Mr. Micciari was accessing images during a discrete period of time. Moreover, as addressed in detail in Dr. Bardey's report, the "constellation of psychiatric symptoms [which had] manifested throughout the entirety of his life came to a head at the time of the instant offense." See Dr. Bardey's Report: page 18, **Exhibit C**. Mr. Micciari was not part of a criminal network, although he acknowledges his offense contributes to the demand for this type of content. See PSR (ECF No. 45): ¶20. No weapons were used, nor did the offense involve violence nor the threat of violence.

As such, the nature and circumstances of Mr. Micciari's offense support a below-Guidelines sentence.

## B. The History & Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))

A defendant's history and characteristics are another factor which the sentencing court must consider in fashioning an appropriate sentence. See 18 U.S.C. § 3553(a)(1). There are no limitations on the information the court may consider at sentencing "concerning the background, character, and conduct of a person convicted of an offense." 18 U.S.C. § 3661. These qualities, when considered as a whole along with other factors, demonstrate that a variance from the Guidelines range is appropriate.

As set forth *supra*, several aspects of Mr. Micciari's personal history and characteristics counsel in favor of a sentence below the Guidelines range. Mr. Micciari comes from a good family,

one which continues to give their love and support to him and will continue to do so upon his re-entry. Additionally, Mr. Micciari has a demonstrated employment history as well as a college degree. He remains positive that he will make something of himself upon his release from prison. Moreover, while this offense is a serious criminal transgression, his life is otherwise positive and pro-social. He has no other contacts with the criminal legal system, either before his arrest on the instant offense or since. <u>See</u> PSR (ECF No. 45): ¶¶36-37, 40-41.

### C.  <u>The Seriousness of the Offense, Respect for the Law, & Just Punishment (18 U.S.C. § 3553(a)(2)(A)</u>

"Respect for the law is promoted by punishments that are fair, however, not those that simply punish for punishment's sake. There is no reason to believe that respect for the law will increase if a defendant who deserves leniency is sentenced harshly any more than there is reason to believe that respect for the law will increase if a defendant who deserves a harsh punishment receives a slap on the wrist." <u>United States v. Stern</u>, 590 F.Supp.2d 945 (N.D. Ohio) (defendant was convicted of possessing child pornography and sentenced to twelve months and one day imprisonment) (citations omitted); <u>see also</u> <u>Gall</u>, 552 U.S. at 54 ("a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing") (quoting district court).

Mr. Micciari will have spent four months at the Westchester County Jail at the time he is before this Court for sentencing. It should be noted that even prior to his incarceration, he accepted responsibility for his offense, acknowledging how serious his offense was and how it perpetuated the victimization of previously abused children. <u>See</u> PSR (ECF No. 45): ¶20. He also expressed true remorse for having engaged in such behavior. <u>Id</u>. Thus incarceration was not needed for Mr.

Micciari to understand the illegality of his actions and how it impacted the children who were victimized. In this case, a sentence of 30 months, as proposed by the defense, demonstrates that Mr. Micciari's offense was indeed serious, while not being overly punitive. Removing an individual from society for such a period of time surely indicates to the individual and to society at large that this offense is significant and that those who commit this crime will face consequences. Such a sentence will promote respect for the law.

This proposed sentence will serve as just punishment for Mr. Micciari, who will also be required to register as a sex offender upon his release to the community. As several courts have recognized, the collateral consequences of a conviction, including registration as a sex offender, are relevant to the "need" for the sentence imposed to reflect just punishment. See, e.g., United States v. Garate, 543 F.3d 1026, 1028 (8th Cir. 2008) (on remand from the Supreme Court for reconsideration in light of Gall, it was appropriate for the district court to consider *inter alia* that "the lasting effects of being required to register as a sex offender" before imposing a below-Guidelines sentence); United States v. Pauley, 511 F.3d 468, 474-475 (4th Cir. 2007) (in a case involving a conviction for possession of child pornography after Gall, affirming the district court's finding that the defendant "warranted a lower sentence because he lost his teaching certificate and his state pension as a result of his conduct," because "[c]onsideration of these facts is consistent with § 3553(a)'s directive that the sentence reflect the need for just punishment" and "adequate deterrence") (citing 18. U.S.C. §§ 3553(a)(2)(A) and (B)).

### D.  Deterrence to Criminal Conduct & Protection from Further Crimes (18 U.S.C. § 3553(a)(2)(B), (C))

"Under section 3553(a)(2)(B), there are two major considerations: specific and general deterrence." United States v. Huntley, 961 F.Supp.2d 409, 414 (E.D.N.Y. 2013). Mr. Micciari has

no doubt that this Court will impose a sentence that will involve prison. However, a sentence of 30 months goes beyond deterrence – not just for Mr. Micciari, but for the general public.

"General deterrence is effectuated" by the suggested period of incarceration. See United States v. Pichardo, 11-cr-00507 (JBW) (E.D.N.Y. Dec. 7, 2011), ECF No. 21: page 3. Such a sentence "will send a clear message" that possessing CSEM "will result in punishment." Id. The proposed sentence would dissuade others from committing similar crimes. See e.g. United States v. Tanco, 13-cr-00345 (WFK) (E.D.N.Y. May 20, 2016), ECF No. 137: page 7 (finding general deterrence where the imposed sentence would "discourage potential supporters of would-be criminals from aiding and abetting crimes of violence, reducing the likelihood that such crimes actually occur"). Moreover, the general deterrence impact of lengthy prison sentences in image possession cases has been questioned; the Commission has acknowledged that there is no available social science research supporting the theory that criminal punishments "have affected commercial or non-commercial 'markets' since the advent of the Internet and [peer-to-peer] file-sharing." Federal Child Pornography Offenses 2012 at 98; see also Beiermann, 599 F.Supp.2d at 1103-1104 (holding there was little evidence "supporting the notion that harsher punishment would reduce the flow of child pornography on the Internet," and while deterrence is a "laudable" goal, it "is not being achieved according to any empirical or other evidence in this case or, for that matter, empirical evidence in any other case or source that [the district court judge is] aware of"); United States v. Kelly, 868 F.Supp.2d 1202, 1207 (D. N.M. 2012) ("The Court is aware of absolutely no evidence suggesting that increased penalties for the consumers of child pornography have decreased the swell of child pornography produced or posted to the internet, or deterred 'hands-on' abuses against children").

As to specific deterrence, this is Mr. Micciari's first contact with the criminal legal system. While this offense is very serious, his life is otherwise unmarred by criminal activity or anti-social behavior. See PSR (ECF No. 45): ¶¶36-37, 40-41. ██████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████ Moreover, this attempted hack was to access her personal photos and videos – not an attempt to make contact with her. See Dr. Bardey's Report: page 18, **Exhibit C**. Here, Dr. Bardey has indicated that "Mr. Micciari's level of risk for future sexual violence is low" and "is the ideal candidate for rehabilitation." Id. at 19. Mr. Micciari's "risk of recidivism and general risk to the community could be successfully mitigated through his engaging in the ongoing, long-term therapies described [ ] and that he could be safely maintained in the community with that provision." Id. Thus a lengthy prison sentence is not warranted in Mr. Micciari's case.

Indeed, research indicates that "online offenders who had no history of contact offenses almost never committed contact sexual offenses." Michael C. Seto, R. Karl Hanson, & Kelly M Babchishin, "Contact Sexual Offending by Men With Online Sexual Offenses," 23(1) Sexual Abuse J. Res. & Treatment 124, 137 (2011); Michael C. Seto & Angela W. Eke, "The Criminal Histories and Later Offending of Child Pornography Offenders," 17(2) Sexual Abuse J. Res. & Treatment 201, 207-208, table III (2005) (the study's finding that 1.3% of those who had committed child pornography offending recidivated with contact sex offenses "contradict[s] the assumption that all child pornography offenders are at very high risk to commit contact sexual offenses involving children"). As one district court put it, "the empirical literature [ ] generally concludes that there is little – if any – evidence of a direct correlation between viewing child

pornography and the viewer's commission of 'contact' sexual offenses." <u>United States v. Marshall</u>, 870 F.Supp.2d 489, 492 (N.D. Ohio 2012).

A sentence of incarceration will serve to deter Mr. Micciari from any future criminal activity; however, it should not be so lengthy as to prevent this 29-year-old man from ever making something of himself. He wants to get married, have a family, and have a career. A sentence of 30 months, as proposed by the defense, will serve to deter Mr. Micciari from ever again participating in such criminal activity (18 U.S.C. § 3553(a)(2)(B)), and it will further protect the public from any potential criminal behavior by Mr. Micciari (18 U.S.C. § 3553(a)(2)(C)).

### E.  The Need for Treatment & Training (18 U.S.C. § 3553(a)(2)(D)

Here, Mr. Micciari is in need of substance abuse counseling, mental health treatment, and sex offense specific counseling, and he has indicated his willingness to participate. <u>See</u> PSR (ECF No. 45): ¶61, 75. As the Commission reports, studies show that "appropriate 'treatment interventions … are associated with lower rates of recidivism – some of them very significant.'" <u>Federal Child Pornography Offenses 2012</u> at 278, n.30 (citing a project funded by the Department of Justice's Office of Justice Programs).

Dr. Bardey has indicated that Mr. Micciari is a good candidate for various forms of treatment. <u>See</u> Dr. Bardey's Report: page 19, **Exhibit C**. He recommends weekly ongoing individual psychotherapy, group therapy for sex offenders, family counseling, and substance abuse treatment for his cannabis use. <u>Id</u>. Dr. Bardey opines, "The fact that Mr. Micciari demonstrates deep remorse for his actions in the instant offense and is open and willing to engage in treatment are indicative of a positive treatment outcome with intensive sexual offender treatment." <u>Id</u>. Dr. Minasian states the same. <u>See</u> Reports of Dr. Minasian, **Exhibit B**. "Mr. Micciari demonstrates

significant potential as a candidate for outpatient psychotherapy. That is, he has shown a commitment to the therapeutic process and exhibits a genuine desire to understand his psychological and sexual functioning. … Moreover, he has expressed remorse and sorrow for his actions and a clear motivation for change." Id. (August 2025 report). The requested sentence of 30 months will allow Mr. Micciari sufficient time to complete the Bureau of Prison's sex offense specific treatment program, whether it be the residential program (lasting 12 to 18 months) or the non-residential program (lasting 9 to 12 months). See U.S. Department of Justice, Federal Bureau of Prisons, Program Statement: Sex Offender Programs, pages 22-23 (Feb. 15, 2013).[8]

Mr. Micciari would also like to further his education so that he can establish a career path for his future. He has expressed his interest in real estate, and as such he has interest in exploring this potential skill area while also taking courses in the related fields of business management and accounting. Such education and training will assist him upon his re-entry.

### F.  The Kinds of Sentences Available & the Sentencing Ranges Established (18 U.S.C. § 3553(a)(3), (4))

As discussed above, the maximum term of imprisonment for Mr. Micciari's offense is 20 years with no minimum sentence. A term of supervised release of a minimum of five years is mandatory with a maximum of lifetime supervised release. The Court, of course, has the full range of punishment anywhere in this range. The Guidelines range sentence, pursuant to the Plea Agreement, is 78 to 97 months' imprisonment. See Plea Agreement: page 3. The Probation Department has calculated a Guidelines range sentence of 97 to 121 months' imprisonment and has recommended a sentence of 48 months' imprisonment followed by five years of supervised release. See PSR (ECF No. 45): ¶97, page 29.

---

[8]     Available at: https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp (last accessed August 25, 2025).

It is the position of the defense that Mr. Micciari should not be sentenced to such a lengthy prison term, but rather that a sentence lower than the advisory Guidelines range is appropriate. As discussed above, while the sentencing court must consider the advisory Guidelines range, it cannot be presumed that such a range provides reasonable and just punishment. See Nelson, 555 U.S. at 352. Moreover, as also discussed *supra*, there are strong indications that the advisory Guidelines range does not provide a reasonable and just punishment in child pornography cases in general, and the level enhancements which apply in nearly every child pornography case result in Guidelines sentence ranges which fail to meaningfully distinguish more serious offenders from less serious offenders.

It certainly does not provide reasonable and just punishment in Mr. Micciari's case. He has never improperly touched a child, he began treatment prior to his arrest and expressed a willingness to cooperate with law enforcement, and he has fully accepted responsibility for his offense. Moreover, Dr. Bardey has concluded that he presents a low risk of future sexual violence. See Dr. Bardey's Report, **Exhibit C**. His family reports that this behavior was not consistent with his character. As such, Mr. Micciari is on such individual who a below-Guidelines sentence is warranted. The defense submits that a sentence of 30 months is appropriate, followed by a period of five years of supervised release.

### G.  The Need to Avoid Sentencing Disparities (18 U.S.C. § 3553(a)(6))

Possession of Child Pornography has a base offense level of 18. See U.S.S.G. § 2D1.1. This correspondences with a Guidelines sentence recommendation of anywhere from 27 to 63 months, depending on one's criminal history category. See U.S.S.G. Sentencing Table. Mr. Micciari received a total of 13 additional levels pursuant to the plea agreement, and 15 additional

levels pursuant to the Probation Department's calculation, as a result of certain enhancements. However, as discussed *supra*, these enhancements apply in "almost every case," and that such is contrary to the purpose of enhancements, which "are meant to increase a sentence for conduct more aggravated than the typical type of offense." Robinson, 669 F.3d at 778; see also Dorvee, 616 F.3d at 188 ("District judges are encouraged to take seriously the broad discretion they possess in fashioning sentences under § 2G2.2 – ones that can range from non-custodial sentences to the statutory maximum – bearing in mind that they are dealing with an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results").

There are a myriad of cases from courts around the nation where district courts have imposed below-Guidelines sentences in child pornography cases. More often than not, defendants are not receiving Guidelines range sentences. See Non-Production Offenses 2021 at 5 (in 2019, less than one-third (30.0%) of defendants convicted of non-production child pornography offenses received a sentence within the Guidelines range, and most defendants (59.0%) received a below-Guidelines sentence). According to the U.S. Sentencing Commission Interactive Data Analyzer,[9] this trend has continued in Fiscal Year 2024. Indeed, of the 14 defendants sentenced pursuant to U.S.S.G. § 2G2.2 in the Southern District in 2024, 11 received a below-Guidelines sentence. Moreover, of those defendants who received a U.S.S.G. § 2G2.2 Guidelines sentence between 2015 and 2024, nearly two thirds (61.5%) received the minimum Guidelines sentence with another 15.4% receiving a sentence in the lower half of the Guidelines range.

It is also worth noting the possible sentences for a similar offense had it been charged in the New York state court system. See United States v. McAllister, 14-cr-553-2 (E.D.N.Y. Feb. 22, 2016) (Kuntz, J.). Possession of a Sexual Performance By a Child (N.Y. Penal Law § 263.16) is a

---

[9]    Available at https://ida.ussc.gov (last accessed Aug. 25, 2025).

class E felony. This is punishable by a maximum of 1⅓ to 4 years in state prison, or a minimum of 10 years of probation. See N.Y. Penal Law §§ 65.00(3)(a)(iii), 70.00(3)(b), 70.00(2)(e). Had Mr. Micciari's offense been charged in the state system, he would be facing a much lower potential prison sentence.

Accordingly, a prison sentence of 30 months followed by a reasonable period of supervised release would not create a disparity with sentences for similarly-situated defendants.

### H.  The Need to Provide Restitution to Any Victims of the Offense (18 U.S.C. § 3553(a)(7))

It is clear that children were victimized in the creation of the images that Mr. Micciari accessed, although he himself did not create any such images. However, there were no individually identified victims of Mr. Micciari's offense. Pursuant to 18 U.S.C. § 2259(c)(3), as restitution shall be no less than $3,000.00, we ask the Court to impose the minimum amount of restitution. The Probation Department has recommended the Court impose $3,000.00 in restitution pursuant to 18 U.S.C. § 2259(c)(3). See PSR (ECF No. 45): page 29.

### I.  Imposition of Fines & Forfeiture of Criminal Proceeds

Pursuant to statute, the sentencing court may impose a maximum fine of the greatest of $250,000.00, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense. See 18 U.S.C. § 3571.

The sentencing court, in considering whether to impose a fine and the amount, shall consider the factors set forth in 18 U.S.C. § 3572, in addition to the 18 U.S.C. § 3553(a) factors. Imposing a fine upon Mr. Micciari will put him further behind financially, as he is still paying for student loans totaling approximately $65,000.00. See PSR (ECF No. 45): ¶92. It does not appear

from the record that there was any pecuniary loss inflicted upon others as a result of the offense, nor was Mr. Micciari in receipt of any illegally obtained gains from the offense. The Probation Department has determined Mr. Micciari has no income, and there is no indication he has any other significant assets. See PSR (ECF No. 45): ¶91-92. As such, the defense respectfully requests that the Court not impose a fine at sentencing.

Mr. Micciari is aware of the $100.00 mandatory assessment pursuant to 18 U.S.C. § 3013. Due to his inability to pay, he requests that the sentencing court not impose the $5,000.00 assessment pursuant to 18 U.S.C. § 3014(a). Mr. Micciari is indigent as he has no financial resources to pay the assessment, he has no savings and has significant student loan debt, and his future earning potential at this time is speculative. The Probation Department has recommended the Court impose the $5,000.00 assessment pursuant to 18 U.S.C. § 3014(a). See PSR (ECF No. 45): page 29.

Regarding the potential $17,000.00 assessment for child pornography offenses pursuant to 18 U.S.C. § 2259A, in determining the amount of the assessment the sentencing court shall consider the factors set forth in sections 18 U.S.C. § 3553(a) and 18 § U.S.C. 3572. The defense asks the Court to consider the 18 U.S.C. § 3553(a) factors as detailed in this memorandum, which focus on Mr. Micciari as an individual, and demonstrate that this additional assessment is not warranted. Moreover, the factors to be considered pursuant to 18 § U.S.C. 3572 also mitigate against the imposition of this assessment. Mr. Micciari is currently unemployed with an unknown future earning capacity, he has no savings and has significant student loan debt, no financial loss was incurred by any victim of his offense, and Mr. Micciari did not profit from his offense. The Probation Department has recommended the Court impose a $5,000.00 assessment pursuant to 18 U.S.C. § 2259A. See PSR (ECF No. 45): page 29.

Pursuant to the Plea Agreement, Mr. Micciari has agreed to the forfeiture of an iPhone 14 Pro, model no. MPXT3LL/A, serial no. GY6KCF7W5V. <u>See</u> Plea Agreement: page 1.

## VI. <u>CONCLUSION</u>

While his criminal offense justifies punishment and he needs treatment, Mr. Micciari is a low risk for future sexual violence and is a good candidate for treatment in the community. <u>See</u> Dr. Bardey's Report: page 19, **Exhibit C**. Notably, since this investigation in August 2023 and until his incarceration in May 2025, Mr. Micciari lived in the community without any contact with law enforcement. He has also been in psychotherapy with Dr. Minasian since October 2023. <u>See</u> Reports of Dr. Minasian, **Exhibit B**. Additionally, Mr. Micciari has the demonstrated love and support from family and friends which is needed to ensure his continued law-abiding life.

While the Guidelines suggests substantial imprisonment, the defense asks this Court to impose a reasonable below-Guidelines sentence. Because Mr. Micciari does not pose a risk of committing a contact offense in the future, because he fully accepts responsibility and expresses deep remorse for his conduct, and because he is addressing the issues which led to the instant possession of CSEM offense, a below-Guidelines sentence would be an appropriate resolution to the matter. Mr. Micciari recognizes that he must be punished for his criminal conduct. However, he respectfully requests that the Court impose a sentence of 30 months' incarceration followed by five years of supervised release in the community. Such a sentence is sufficient but not greater than necessary.

Dated:  August 26, 2025                      Respectfully submitted,
        White Plains, New York


                                            _____
                                            Jill K. Sanders, Esq.
                                            PAPPALARDO & PAPPALARDO, LLP
                                            Attorneys for Defendant Giuseppe Micciari
                                            222 Bloomingdale Road, Suite 301
                                            White Plains, NY 10605
                                            Tel (914) 725-7000
                                            Fax (914) 725-1700
                                            Email jsanders@pappalardolaw.com

To:     Hon. Philip M. Halpern (*via ECF*)
        United States District Court, Southern District of New York
        The Hon. Charles L. Brieant Jr. Federal Building and United States Courthouse
        300 Quarropas Street
        White Plains, NY 10601

Cc:     Assistant U.S. Attorney Marcia Cohen (*via ECF*)
        United States Attorney's Office, Southern District of New York
        300 Quarropas Street
        White Plains, NY 10601

## <u>CERTIFICATION</u>

I hereby certify that on August 26, 2025, the foregoing Memorandum in Aid of Sentencing on Behalf of Defendant Giuseppe Micciari was served by CM/ECF upon AUSA Marcia Cohen, counsel for the United States of America.

Dated:  August 26, 2025
       White Plains, New York

 

 

_____
Jill K. Sanders