

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*50 Main Street, Suite 1100*
*White Plains, New York 10606*

September 2, 2025

The Honorable Philip M. Halpern
United States District Judge
Southern District of New York
United States Courthouse
300 Quarropas Street
White Plains, NY 10601

      Re: ***United States v. Giuseppi Micciari***
          **25 Cr. 31 (PMH)**

Dear Judge Halpern:

      Sentencing in the above-referenced case is scheduled for September 16, 2025. The Government respectfully submits this letter to request that the Court impose the sentence recommended by the Probation Office of 48 months' imprisonment to be followed by five years' supervised release.

<u>**Factual Background**</u>

**A.**  <u>**Offense Conduct**</u>

      The investigation concerning Giuseppi Micciari began as part of a larger HSI investigation into an individual in South Africa who was selling child pornography via Telegram, an internet and cloud based instant messaging service. PSR ¶ 6. In October 2022, an HSI Special Agent acting in an undercover capacity ("UC-1") engaged in communications on Telegram with a user ("Seller-1") who was offering the sale of child pornography. Seller-1 offered two bundles of child sexual assault material – one for $55 and one for $70. PSR ¶ 7.

      In February 2023, UC-1 purchased, via a PayPal address provided by Seller-1, a bundle of 50 videos of child pornography for $55. PSR ¶ 8. HSI's investigation revealed that the PayPal address provided by Seller-1 contained numerous transactions for exactly $55 and exactly $70. PSR ¶ 9. Those amounts were consistent with Seller-1's pricing for the two child pornography packages offered by Seller-1 to UC-1. PSR ¶ 10. The records for that PayPal account – and additional investigation – revealed that on December 14, 2022, Giuseppi Micciari made a payment for $55 to that PayPal account. PSR ¶ 10.

      On August 9, 2023, Micciari arrived at John F. Kennedy Airport on a flight from Italy. He was referred for a border examination by officers from Customs and Border Protection ("CBP"). Micciari presented an iPhone 14 Pro and a MacBook for examination, identified the

devices as belonging to him, and provided the passwords to the devices. CBP provided the devices to HSI. The devices were held by HSI and, the following day, the Honorable Andrew E. Krause of the Southern District of New York signed a search warrant authorizing the search and seizure of Micciari's phone for evidence relating to child pornography. PSR ¶ 11.

A search of Micciari's phone revealed that the phone contained the Telegram app. Among the communications contained in the Telegram app were the following: On August 18, 2022, a user with the screen name "Kal-El" asked Micciari, "what age teen content you have." Micciari replied, "there one big Mega 10-17." Mega is a reference to a New Zealand-based cloud storage platform that permits users to store and share images and videos while 10-17 is a reference to the range of ages for those in the images and videos. Kal-El told Micciari to send the Mega link and Micciari asked whether Kal-El wanted to trade or buy it. Kal-El said he would trade. Thereafter, Micciari transmitted a Mega link to Kal-El. According to the case agent, it appears that Micciari traded commercially available adult pornography that generally costs the price of a subscription to access. PSR ¶ 12.

The search of Micciari's phone also revealed that there were approximately 32 images and videos of child pornography in the Telegram app's cached data. These images and videos are described in detail in the PSR at ¶ 13. GPS data recovered from Micciari's phone reflected that Micciari was at or in the vicinity of Micciari's residence in Westchester County, New York, at the time he downloaded the videos that are described in the PSR. PSR ¶ 14.

The review of Micciari's phone revealed two video files in the Photo Gallery, both of which were downloaded on June 30, 2023, at a time when, according to GPS data from the phone, Micciari was located in Westchester County. These videos depict what appear to be "tours" of a gallery of hundreds of thumbnail photos, which appear to represent videos, many of which appear to be child pornography. A number of these videos are described in the PSR at ¶ 15.

**B.   <u>Additional Conduct</u>**

The review of Micciari's phone also revealed communications via Telegram in which Micciari attempted to find a way to hack into the Snapchat account ███████████ ███████████ On May 24, 2023, Micciari asked a user with the screen name "BLK," "Bro u know anyone who does snapchat hacks." On May 27, 2022, BLK responded, "I do snapchat hacks bro. How many account hacks do you want me to do?" Micciari responded, "Damn really" and "I just need one rn." BLK asked, "What's the username." Thereafter, Micciari provided BLK with ███████████ account name. BLK told Micciari, "$30 and you get access to it" and provided a PayPal account. Micciari told BLK, "Just sent it over." BLK requested a screenshot of the payment confirmation and Micciari transmitted a photo reflecting a 30 Euro payment. In subsequent communications with BLK in May, June, July, and August, Micciari repeatedly asked for a status report.

The Government's investigation confirmed that Micciari never engaged in any hands-on abuse ███████████.

## C.  The Federal Charges and the Guilty Plea

On March 18, 2025, Micciari entered a guilty plea before this Court to a one-count Superseding Information, S1 25 Cr. 131. The Superseding Information charged Micciari with possessing images of child pornography, including images of child pornography involving prepubescent children and minors who had not attained 12 years of age, that he had received via the internet, in violation of 18 U.S.C. § 2252A(a)(5)(b). Micciari entered his guilty plea pursuant to a plea agreement.

Pursuant to the Plea Agreement, the parties agreed that, pursuant to U.S.S.G. § 2G2.2(a)(1), the base offense was 18; that two levels were added, pursuant to § 2G2.2(b)(2) because the material involved a prepubescent minor; that four levels were added, pursuant to § 2G2.2(b)(4), because the offense involved material that portrayed sadistic or masochistic conduct or other depictions of violence; and that two levels were added, pursuant to § 2G2.2(b)(6), because the offense involved the use of a computer for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material. Finally, the parties agreed that, pursuant to § 2G2.2(b)(7)(D), five levels were added because the offense, including relevant conduct, involved at least 600 images.

The Plea Agreement stated that, assuming the defendant clearly demonstrated acceptance of responsibility through his allocution and subsequent conduct prior to the imposition of sentence, a three-level reduction would be warranted, pursuant to USSG § 3El.l(a) and (b).  In accordance with the foregoing calculations, the Plea Agreement calculated that the applicable offense level was 28.  The Agreement provided that, based on a Criminal History Category of I, the defendant's sentencing range was 78 to 97 months' imprisonment.

## D.  Micciari's Violation Of His Bail Conditions

The defendant was arrested for the instant offense on November 1, 2023 and released the same day with pretrial supervision. On May 14, 2025, U.S. Pretrial Services Officer ("PSO") Andrew Abbott reviewed Micciari's cell phone while conducting a home inspection.  PSO Abbott discovered eight photos of topless adult women on the defendant's phone. The information associated with the photos indicated that the photos had been taken on three separate occasions in April 2025. Micciari admitted to PSO Abbott that he had used an iPad at the restaurant where he was employed to access photos of topless adult women, and that he used his phone to take pictures of the topless women.

On May 15, 2025, this Court revoked Micciari's bail. Micciari self-surrendered to the United States Marshals Service on May 16, 2025.

## E.  The Presentence Report

The Probation Office added a 2-level enhancement for distribution pursuant to U.S.S.G. § 2G2.2(b)(3)(F), resulting in an offense level of 30 and a Guidelines range of 97 to 121 months' imprisonment.  The PSR recommended that the Court impose a sentence of 48 months' imprisonment.  In explaining the basis for its recommendation, the Probation Office stated, "By

viewing and distributing child pornography, Micciari re-victimized each of the children depicted, and he helped sustain a market for the production of such pictures and videos. It is also particularly alarming that upon an examination of his phone pursuant to a warrant as part of this case, it was discovered that the defendant attempted to hack into the Snapchat account of a teenage girl who resided next to him." The Probation Office also noted the existence of a number of mitigating factors, including the fact that "Micciari has a history of mental health and substance abuse issues that were untreated at the time of the instant offense, and may have contributed to his criminal conduct in this matter." The Probation Office also recognized the defendant's motivation to address his issues "through mental health and substance abuse treatment" and concluded that "[a]ddressing these issues may reduce the defendant's risk of recidivism and increase his chances at rehabilitation."

## ARGUMENT

### This Court Should Impose a 48-Month Term of Imprisonment

The Government requests that this Court impose the sentence recommended by the Probation Office of 48 months' imprisonment, to be followed by a five-year term of supervised release. The requested sentence is appropriate given the seriousness of the defendant's offense conduct and the need for punishment and deterrence here.

Although the Sentencing Guidelines no longer play a mandatory role at sentencing, they continue to play a critical role in trying to achieve the "basic aim" that Congress tried to meet in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." *United States v. Booker*, 543 U.S. 220, 252 (2005). In furtherance of that goal, judges are required to "consider the Guidelines `sentencing range established for... the applicable category of offense committed by the applicable category of defendant,' § 3553(a)(4), the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims, §§ 3553(a)(1), (3), (5)-(7) (main ed. and Supp. 2004)." 543 U.S. at 259-60.

In sentencing defendants, district courts must consider not only the Guidelines but also the other factors set forth in Section 3553(a). Section 3553(a) provides that the sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations that district courts must take into account at sentencing: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established [in the Sentencing Guidelines]; (5) any pertinent policy statement [issued by the Sentencing Commission]; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

The Requested Sentence Will Reflect the Seriousness of the Offense Conduct:  The defendant's offense involved serious criminal conduct committed over an extended period of time. The images and videos the defendant downloaded involved the victimization of numerous children. Those children are victimized again each time their images and videos are viewed and disseminated.

Further, the defendant's conduct with respect to his attempted hacking into the Snapchat account of ███████████████ is also, as the Probation Office underscores, "particularly alarming." The defendant engaged in this conduct even though ████████████████████ ███████ Moreover, the attempted hack into this Snapchat account was not an isolated event. Micciari admits that he attempted to hack into several girls' Snapchat accounts.  His willingness to engage in this conduct and his explanation for this conduct -- that he "fantasized about what teenaged girls were texting their friends and their boyfriends" and "wanted to know what these girls were sending to their boyfriends and if they were 'sexting'" (Def. Submission at 9) – speaks volumes concerning the strength of his desire for sexually explicit images of underaged females.

The Requested Sentence Will Promote Respect for the Law: Given the defendant's serious offense conduct, a sentence of 48-months' imprisonment is appropriate here.  This substantial sentence will promote respect for the law by appropriately reflecting the seriousness of the offense.

The Requested Sentence Will Reflect the Nature and Circumstances of the Offense and the History and Characteristics of the Defendant:  The Government recognizes that there are a number of mitigating factors here, including Micciari's history of untreated mental health and substance abuse issues, his substantial family support, and his apparent recognition of the seriousness of his criminal conduct. Indeed, these mitigating factors played a role in the Government's decision to permit the defendant to enter a plea to the possession count rather than the distribution count, enabling him to avoid the 60-month mandatory minimum.

The Government is hopeful that, upon release from prison, Micciari will adhere to a treatment program and that his family's support will increase his chances of rehabilitation. The fact that the defendant was not able to adhere to the conditions of his bail while awaiting sentencing underscores that the defendant will face a difficult road.

The Requested Sentence Will Provide Adequate Deterrence and Provide Just Punishment: The requested sentence would provide a just punishment, underscoring to Micciari that his serious offense conduct will be met with serious consequences. Further, the requested sentence would send an important message of deterrence to others who engage in the same offense conduct as Micciari.  Under the circumstances presented here, the requested sentence of 48 months' imprisonment cannot be considered greater than necessary.

*     *     *     *     *

## Section 3014, Restitution, and Section 2259A

1. **18 U.S.C. § 3014**:

18 U.S.C. 3014, which has been extended by Congress until September 30, 2025, provides that "the court shall assess an amount of $5000 on any non-indigent person or entity convicted of an offense under. . . (4) chapter 117 (relating to transportation for illegal sexual activity and related crimes)." The imposition of this assessment is mandatory here because the defendant is a "non-indigent person." Accordingly, the PSR recommends an assessment. PSR at 29. The Government agrees that this Court should impose a $5,000 assessment pursuant to 3014.

2. **Restitution**

The Government, to date, is not aware of any requests for restitution. Without a specific request and a submission that provides a basis for the Court to determine losses, restitution cannot be awarded. *See* 18 U.S.C. §2259(b)(2)(A) (the Court "shall determine the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim").

3. **18 U.S.C. § 2259A**

The Amy Vicky and Andy Act ("AVAA"), which was codified in Section 2259A, requires courts to impose a special assessment of "not more than $17,000 on any person convicted" of possession of child pornography. 18 U.S.C. § 2259A(a). Section 2259A(c) provides that, "[i]n determining the amount of the assessment under subsection (a), the court shall consider the factors set forth in sections 3553(a) and 3572." 18 U.S.C. § 2259A(c).

Section 3572(a) provides that, "together with the factors set forth in 3553(a)," the court shall consider: (1) the "defendant's income, earning capacity, and financial resources;" (2) the burden that the fine will impose upon the defendant or any other person; (3) "any pecuniary loss inflicted upon others as a result of the offense;" (4) "whether restitution is ordered or made and the amount of such restitution;" (5) the "need to deprive the defendant of illegally obtained gains from the offense;" (6) the "expected costs to the government of any imprisonment, supervised release, or probation component of the sentence;" (7) "whether the defendant can pass onto consumers or any other person the expense of the fine;" and (8) certain additional factors relevant if the defendant is an organization. 18 U.S.C. § 3572(a).

Special assessments collected pursuant to Section 2259A do not go to a specific victim or to the Government, but rather are deposited and pooled in the "Child Pornography Victims Reserve" fund established in 18 U.S.C. § 2259B(a). A special assessment pursuant to Section 2259A, in contrast to restitution pursuant to 18 U.S.C. § 2259, does not require identification of a victim and proof of losses.

Here, although the Probation Office recommended an assessment pursuant to Section 2259A of $5,000, the Government requests that this Court impose an assessment of $8,000. This amount is especially appropriate given that the defendant's conduct victimized numerous children and that specific requests for restitution have not been made.

## Conclusion

For all the foregoing reasons, the Government requests that this Court impose a sentence of 48 months' imprisonment, to be followed by a five-year term of supervised release.

Very truly yours,

JAY CLAYTON
United States Attorney

by: _____
Marcia S. Cohen
Assistant United States Attorney
(914) 993-1902

cc: Jill K. Sanders, Esq.
    Sara K. Willette, Probation Officer